UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TRADITION HOMES, LLC, a Florida Limited
Liability Company,

               Plaintiff,

vs.                                               Case No.  3:06-cv-558-J-33HTS

TEXTRON FINANCIAL CORPORATION, a
Delaware Corporation; DAVID SAPIENZA, an
individual; and LARRY FRYE, an individual,

               Defendants.
_____/

**ORDER**

This cause comes before the Court pursuant to Defendants' Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. #35), filed on November 30, 2007.  Tradition Homes filed a Memorandum in Opposition to Defendants' Motion for Summary Judgment (Doc. #50) on January 7, 2008.  For the reasons below, summary judgment is granted in part and denied in part.

**I.    STANDARD OF REVIEW**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude grant of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun

Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

"When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324). If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples *ex rel.* Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)).

**II.   BACKGROUND**

Tradition Homes operated as a dealer of manufactured homes from 2002 until 2006. (Doc. #50 at 2.) Manufactured homes dealers require floor plan financing to purchase and maintain their inventory of manufactured housing offered to the public for sale. Tradition obtained its floor plan financing from two lenders: Textron Financing and 21st Mortgage. (Id.) In April of 2006, Tradition

experienced operating cash flow difficulties, due to unrepaid loans made to Century Precast, a sister company to Tradition Homes. (Id. at 3.) Realizing it would be unable to meet all of its obligations to Textron under the floor plan financing, Tradition developed a work-out plan which would allow Tradition to satisfy its debs to Textron. (Id. at 3-4.)

Tradition presented this plan to Textron executives Larry Frye and David Sapienza on April 10, 2006. (Id. at 4.) That evening, Textron's Vice President of Sales, Steve Bratcher, attended a cocktail reception at a trade show in Savannah, Georgia. (Id. at 5.) At this reception, Bratcher spoke with Scott King, a representative of 21st Mortgage. During their conversation, Bratcher intimated that Textron was having problems with Tradition, though there is some dispute as to what exactly Bratcher said to King. (Doc. #35 at 6.) King contacted 21st Mortgage manager, Rusty Schock, soon thereafter and relayed the information obtained from Bratcher. (Id.) Under Schock's instructions, King visited Tradition the next day to conduct a surprise inventory audit. (Id.) Soon after King's inventory audit, 21st Mortgage deactivated Tradition's line of floor plan financing. (Doc. #50 at 7.)

Textron, in response to the financial situation with Tradition, sent notice of lien payoff requirements to Tradition's customers on May 15, 2006. (Doc. #35 at 7.) Textron desired to receive partial payment of Tradition's debt directly from Tradition's customers. (Doc. #50 at 7.) These letters allegedly caused panic among Tradition's customers and severely damaged Tradition's business reputation. (Id. at 8-9.) As a result of these events and damage to its reputation, Tradition closed its business in May 2006, ceasing its selling operations. (Id. at 9.)

**III.     ANALYSIS**

    **A.     Count I- Tortious Interference with the Business Relationship between Tradition Homes and 21st Mortgage by Textron**

Under Florida law, the four elements required to establish tortious interference with a business relationship are: (1) the existence of a business relationship, (2) the defendant's knowledge of the relationship, (3) an intentional and unjustified interference with that relationship by the defendant, and (4) damage to the plaintiff as a result of the breach of that relationship. Tamiami Trail Tours, Inc. v. Cotton, 463 So. 2d 1126, 1127 (Fla. 1985). Textron contends that Tradition Homes cannot prove that the alleged interference was intentional, nor can it show any direct damages. Arguing the alleged interference was merely unintentional, Textron states that Bratcher was only "making a general reference regarding a mutual business contact at a trade event." (Doc. #35 at 11.) In response, Tradition asserts that not only did Bratcher convey Tradition's confidential financial information within hours of learning it from Frye and Sapienza, but he engaged King in the conversation, reading the information to King, in detail, from his Blackberry. (Doc. #50 at 11.) This was particularly significant, according to Tradition, because King had never before engaged in conversation with Bratcher regarding a specific common customer. (Id.)

Citing to Ethyl Corp. v. Balter, 386 So. 2d 1220, 1224 (Fla. 3d DCA 1980), Textron argues that any alleged interference that is only negligent or consequentially affected is not actionable. However, in Ethyl Corp., the issue was not intent but whether there was a direct interference with the business relationship. Ethyl Corp., 386 So. 2d at 1223. It was determined at trial that the alleged interference occurred after the breach in the business relationship, and thus, there was no direct interference required for a cause of action. Id. In this case, it is stipulated between the parties that

Bratcher, Textron's representative, did convey information regarding Tradition's business with Textron to King, 21st Mortgage's representative. What is disputed is what exact information was conveyed and Bratcher's subjective intent. These questions are properly for a jury. For these reasons, the Court finds that there is a genuine issue of material fact on this issue.

Textron also argues that Tradition cannot show it suffered any direct damages. According to Textron, 21st Mortgage withdrew its business because of Tradition's financial situation, not due to any comment Bratcher may have made to King. 21st Mortgage would have withdrawn its business from Tradition eventually, regardless of any alleged disclosure from Textron. In response, Tradition states that 21st Mortgage immediately deactivated Tradition's floor plan line of credit solely as a result of Textron's improper disclosure to 21st Mortgage. To support this contention, Tradition notes that 21st Mortgage had reassigned its account to an account executive responsible for problematic accounts even before King conducted the surprise inventory audit. (Doc. #50 at 12.) Based upon the evidence presented, the Court finds that there is a genuine issue of material fact and summary judgment is not proper on Count I.

  **B.**  **Count II - Tortious Interference with the Business Relationship between Tradition Homes and Its Customers and Potential Customers by Textron**

Under Florida law, "a plaintiff may properly bring a cause of action alleging tortious interference with present or prospective customers but no cause of action exists for tortious interference with a business's relationship to the community at large." Ethan Allan, Inc. v. Georgetown Manor, Inc., 647 So. 2d 812, 815 (Fla. 1994). Textron claims that Tradition fails to allege any specific customer relationship that was damaged, and that Tradition suffered no damage as a result of Textron's actions. Responding to this assertion, Tradition maintains it lost many

potential customers and sales as a result of Textron's "Notice of Lien" letters. Particularly, one of Tradition's long-term customers, Silcon Development, cancelled its verbal commitment to purchase four manufactured housing units and ceased doing business with Tradition after receiving the letter. (Doc. #50 at 13.) Furthermore, several existing customers showed the "Notice of Lien" letters to Tradition's customer referral sources, all of which ceased referring any new business to Tradition. (Id.)

Textron replies that it was justified in sending out the "Notice of Lien" letters to protect its own financial interests. "[A]ctivities taken to safeguard or promote one's own financial interests are entirely non-actionable" as long as improper means are not used. Ethyl Corp., 386 So. 2d at 1225. Textron asserts that it had a lien on the proceeds of the sales of the manufactured home units, which arose out of the debt owed to Textron. Textron's "Notice of Lien" letters stated that Textron had a "purchase money or other first priority security interest in the Inventory Unit, together with the proceeds of the Inventory Unit." (Doc. #50-2 at 1.) However, a buyer takes a good free of a lender's security interest once the merchant has a contract for sale with the buyer. See Fla. Stat. § 679.3171; Hamilton County Bank v. Tuten, 250 So. 2d 17, 20 (Fla. 1st DCA 1971). Textron may have been entitled to the proceeds Tradition received from these customers, but Tradition asserts that the letters were deceptive because they implied that Textron had a lien on the actual unit, instead of the proceeds.

Tradition further contends that the purpose of these letters was not to protect Textron's financial interests, but to damage Tradition's business relationship with its customers. The Court finds that the issue of whether the "Notice of Lien" letters were intended to tortiously interfere with Tradition's business or to protect Textron's financial interests is a matter for a jury. Textron has also

failed to meets its burden of showing that Tradition cannot prove that any specific customer relationship was harmed as a result of Textron's alleged actions. Therefore, for the reasons stated above, the Court finds that there is a genuine issue of material fact as to Count II, and Textron is not entitled to summary judgment.

### C.  Count III - Unfair and Deceptive Trade Practices

The Florida Deceptive and Unfair Trade Practices Act prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204. The Act is designed "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2). "'Trade or commerce' means the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." Fla. Stat. § 501.203(8). While Textron certainly engages in trade or commerce in the course of its business as a floor plan lender, Textron argues that it was not engaging in trade or commerce when it allegedly made the statements regarding Tradition's financial status. These communications, Textron claims, were not advertising, soliciting, providing, offering or distributing any good or service, as required by the statute.

In response, Tradition asserts that Textron, in offering and providing its lending services to Tradition, engaged in trade or commerce. As part of those services, Tradition alleges that Textron had a duty to maintain the confidentiality of Tradition's financial information. Tradition further contends that the "Notice of Lien" letters were deceptive and fell within the scope of Textron's floor

plan lending services. As stated previously, there is a genuine dispute as to what information was communicated between Textron's representative and 21st Mortgage, as well as whether Textron was justified in sending out the "Notice of Lien" letters. Textron has failed to carry its burden of showing that there is no genuine issue as to whether Textron's alleged disclosures arose out of their lending services to Tradition. Thus, whether Textron was engaged in trade or commerce, as defined by the statute, is a matter for a jury. Summary judgment is not proper.

### D.     Count IV - Defamation, Trade Libel & Disparagement

"The elements of a defamation claim are: (1) the defendant published a false statement; (2) about the plaintiff; (3) to a third party; and (4) the falsity of the statement caused injury to [the] plaintiff." Border Collie Rescue, Inc. v. Ryan, 418 F. Supp. 2d 1330, 1348 (M.D. Fla. 2006). A claim for trade libel shares similar elements with defamation, with the added elements that the defendant should have known that the falsehood would discourage others not to deal with the plaintiff, that the falsehood did play a material part in discouraging dealings with the plaintiff, and that the publication of the falsehood proximately caused special damages. Id. Textron squarely asserts that Tradition's claims fail as a matter of law since truth is valid defense. Indeed, truth is a valid defense. See e.g., Razner v. Wellington Reg'l Med. Ctr., Inc., 837 So. 2d 437, 443 (Fla. 4th DCA 2002) (finding truth is a defense to defamation claim). However, it has been established at this point in the case that there is a strong dispute over exactly what information Textron conveyed to 21st Mortgage, whether Textron was under a duty to keep Tradition's financial information confidential, whether Textron was entitled to send the "Notice of Lien" letters, and whether the information in those letters was in fact true. Therefore, the Court finds that there is a genuine issue of material fact, and summary judgment is not proper.

**E.     Counterclaim**

Textron also seeks summary judgment on its four-count counterclaim. Textron's counterclaim alleges the following counts: (1) collection of amounts due under the credit documentation; (2) an action on Guaranties; (3) a conversion claim against Tradition and Century Precast; and (4) the imposition of a constructive trust against Century Precast. (Doc. #28 at 9-14.) Textron argues that the facts set forth in its counterclaim are affirmed by Frye's affidavit, which states that Tradition still owes Textron $654,016.25. (Doc. #36-2 ¶ 31.) This amount represents the remaining debt from Textron's floor plan financing. (Id.) Tradition executed a finance plan and security agreement with Textron, which required Tradition to pay the amounts financed on each manufactured home unit before it was sold. (Id. ¶ 14, 17.) Textron learned that Tradition was not meeting its obligations under the Credit Documentation, and thus gave notice of default to Tradition, demanding payment of all debt owed to Textron. (Id. ¶ 19-20.) Guaranties were also executed to secure the debt owed under the Credit Documentation, and Textron made a demand under the Guaranties for repayment, which remain unpaid. (Id. ¶ 22-24.) Frye also states that Century Precast has failed to turn over any proceeds that allegedly belong to Textron. (Id. ¶ 27.) Tradition does not dispute that it owes Textron the balance on the floor plan financing it received, but rather whatever amount Tradition recovers on its claims against Textron will be subject to an off-set of the amount it owes Textron. Since Tradition has admitted that it owes Textron the debt under the Credit Documentation, the Court finds that summary judgment is proper on Count I of Textron's Counterclaim. Thus, Textron is awarded $566,828.40 in principal under the Credit Documentation as of May 25, 2007, plus accrued interest.

However, in regard to the claim against the Guaranties, Tradition alleges that Textron acted to harm the legitimate interests of the Guarantors by destroying Tradition's business though Textron's alleged tortious interference. Under Florida law, a defense against a guaranty exists where the creditor acts to harm the interests of the guarantor. Dorsy v. Md. Nat'l Bank, 334 So. 2d 273, 274 (Fla. 1st DCA 1977). The Guarantors' interests are in Tradition, the primary debtor, retaining the ability to pay the debt owed to Textron. If Tradition prevails on its claims that Textron tortiously interfered with Tradition's business, then it will be shown that Textron's actions left Tradition unable to meet its obligations to Textron. Thus, Textron would have acted to harm the Guarantors' interests and the Guarantors would have a valid defense against the guaranty. Frye's affidavit stating that demand was made upon the Guarantors does not by itself warrant summary judgment if a valid defense exists. Therefore, summary judgment is not proper.

Tradition also argues that Textron's claims for conversion and seeking a constructive trust against Century Precast cannot stand, since Textron has not offered any evidence to show how any of the funds lent to Century Precast out of Tradition's general operating account were identified as belonging to Textron. A general obligation to pay money or a breach of contract does not give rise to a claim of conversion; a party must specifically identify the money in order support its claim of conversion. Kee v. Nat'l Reserve Life Ins. Co., 918 F.2d 1538, 1541 (11th Cir. 1990). Frye's Affidavit merely states that "Century has failed and refused to pay any proceeds belonging to [Textron] that it received from Tradition to [Textron]." (Doc. #36-2 ¶ 27.) Textron has not provided any other evidence to the Court to show how Century Precast is liable to Textron. As Tradition states, the loans to Century Precast came from Tradition's general operating account, and none of the funds were identified as belonging specifically to Textron. Furthermore, Century Precast, while

having a common owner with Tradition, is not a debtor to Textron under the floor plan financing. The Court is not persuaded that Frye's affidavit, standing alone, is enough to show the absence of a genuine issue of material fact on these issues. Frye's affidavit does not identify the specific funds in possession of Century Precast that allegedly belong to Textron. It merely makes the general allegation that Century Precast has a financial obligation to Textron. Textron has offered no other evidence to show that either Century Precast had an obligation to pay money to Textron or that specific funds belonging to Textron were transferred to Century Precast. For these reasons, the Court finds that Textron has failed to sustain its burden for summary judgment. The Court finds there is a genuine issue of material fact as to counts II, III, and IV of the counterclaim, and summary judgment is not proper on these counts.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

1) Defendants' Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. #35) is **GRANTED IN PART** and **DENIED IN PART.**

    a) As to Count I, summary judgment is **DENIED**.

    b) As to Count II, summary judgment is **DENIED**.

    c) As to Count III, summary judgment is **DENIED**.

    d) As to Count IV, summary judgment is **DENIED**.

    e) As to Count I of Textron's Counterclaim, summary judgment is **GRANTED**.

Textron is awarded $566,828.40 in principal under the Credit Documentation as of May 25, 2007, plus accrued interest.

    f) As to Count II of Textron's Counterclaim, summary judgment is **DENIED**.

      g)      As to Count III of Textron's Counterclaim, summary judgment is **DENIED**.

      h)      As to Count IV of Textron's Counterclaim, summary judgment is **DENIED**.

2)      The Clerk of the Court shall enter judgment accordingly.

**DONE** and **ORDERED** in Chambers in Jacksonville, Florida, this 27th day of March, 2008.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:
All Counsel of Record